# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA, MIDDLE DIVISION

| | |
|---|---|
| VIGINIA BRATCHER, ) | |
| as personal representative of the Estate ) | |
| of Gregory Don Bratcher, Jr., deceased; ) | Jury Trial Demanded |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| JEFFREY EUGENE LINARD II; ) | |
| GLENN WALTON, CHIEF OF THE ) | |
| CITY OF ODENVILLE POLICE ) | |
| DEPARTMENT; and, THE CITY OF ) | |
| ODENVILLE, ALABAMA; ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW the Plaintiff, Virginia Bratcher, in her capacity as the personal representative of the estate of Gregory Don Bratcher, Jr. ("Gregory")[1], deceased, who alleges the following facts, asserts the following causes of action, and seeks to recover the following damages against Jeffery Eugene Linard, II; Glenn Walton; and the City of Odenville, Alabama.

## Introduction

Gregory's death was preventable and unnecessary. Gregory was a decorated veteran with a documented history of Post-Traumatic Stress Disorder (PTSD) and

---

[1] The Deceased is referenced by his first name to avoid confusion with other individuals named herein sharing the same last name.

-1-

suicidal ideations. Prior to the fatal shooting giving rise to this action, officers with the City of Odenville Police Department ("ODP") had responded to Gregory's Odenville residence concerning his threats of suicide and were aware of his suicidal ideations.

On July 15, 2023, the day of his death, Gregory exhibited clear signs of a mental health episode. Within minutes of arriving at Gregory's Odenville residence, Linard immediately applied deadly force with tunnel vision. In his rush to use deadly force, Linard ignored any effort to resolve Gregory's suicidal threats peacefully. Linard failed to properly assess Gregory's suicidal threats, quickly terminating the situation with one fatal shot.

This case concerns misinformation and miscommunication, an officer's own internal biases resulting in excessive deadly force, and a police department's failure to provide a lawfully required mental health service to a man threatening suicide on his own property. As a result, Gregory's life was terminated without reasonable excuse or justification.

## Parties, Jurisdiction, and Venue

1. The decedent, Gregory Don Bratcher, Jr., was 45 years old at the time of his death on July 15, 2023. He was a resident and citizen of St. Clair County, Alabama.

2. The Plaintiff, Virginia Bratcher ("Virginia"), is over the age of nineteen

years, and a resident and citizen of St. Clair County, Alabama. She is the personal representative of the estate of Gregory Don Bratcher, Jr., deceased, having been appointed on January 24, 2025, by the Circuit Court of St. Clair County (*See Alma Bratcher P.R. v. Estate of Gregory Don Bratcher, Jr. et. al.* Case No.: CV-2024-900037, Doc. 71). Virginia is the mother of the deceased.

3. The defendant, the City of Odenville ("The City"), is an Alabama municipal corporation that duly organized the Odenville Police Department ("OPD") and authorized its policies, procedures, customs, and practices, which govern the duties and actions of its police officers. The City can be served through Katie Roberson, its City Clerk, at 183 Alabama Street, Odenville, AL 35120. A verified notice of claim was filed/served upon the City, by and through the City Clerk, on November 23, 2023.

4. The defendant, Jeffrey Eugene Linard II ("Linard"), is a resident and citizen of St. Clair County, Alabama, who was working in the line and scope of his employment as a police officer with the City, by and through OPD, on July 15, 2023. Defendant Linard can be served at his residence at 150 Hickory Lane, Odenville, Alabama 35120. All of Linard's actions set forth in this complaint were done within the course and scope of his employment with the City and under color of Alabama State law. Linard is only sued in his individual capacity, not in his official capacity.

5. The defendant, Glenn Walton ("Walton") or ("Chief Walton"), is a

resident and citizen of St. Clair County, Alabama who was working in the line and scope of his employment as a police officer with the City, by and through OPD, on July 15, 2023.  Defendant Walton can be served at the Odenville Police Department, 2600 US Hwy 411, Odenville, AL 35120.

6. All of Walton's actions set forth in this complaint were done within the course and scope of his employment with the City, and under color of Alabama State law.  Walton is only sued in his individual capacity, and not in his official capacity.

7. This Court has subject matter jurisdiction over Count 1 pursuant to 28 U.S.C. § 1331 because it alleges violations of the United States Constitution and 42 U.S.C. § 1983.  This Court has supplemental federal jurisdiction pursuant to 28 U.S.C. § 1367(a) over Count 2, which asserts claims under Alabama law.

8. Venue is proper in this division and district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this division and district.  Venue is also proper in this division and district pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Linard, Walton, and the City reside in this division and district under the meaning of this statute.

## Statement of Facts

9. This is a wrongful death case resulting from Linard's shooting and

killing of Gregory.[2]

10. Prior to the subject July 15, 2023 fatal shooting, the City had written policies and procedures restricting the use of excessive force and, specifically, deadly force.

11. Despite the existence of these policies and procedures, the City refused to discipline and hold accountable Officer Linard, whose use of unconstitutional, excessive, and/or unskillful force in the line of duty, resulted in Gregory being shot to death.

12. Upon information and belief, supervisors of Officer Linard failed to provide any discipline, education, or training to him following this fatal shooting.

13. In so doing, the City condoned and ratified the excessive, unconstitutional, and/or unskillful force Officer Linard applied when he shot and killed Gregory.

14. Gregory was a decorated soldier, having served multiple tours in overseas missions with the United States Army. As a result of this military service, Gregory developed and was diagnosed with, among other conditions, Post-Traumatic Stress Disorder (PTSD) and began to exhibit suicidal ideations. He was under the care and treatment of providers at the U.S Department of Veteran's Affairs

---

[2] The attached death certificate lists the immediate cause of death as a gunshot wound to the chest, with an underlying cause as PTSD. The manner of death is listed as homicide and how the injury occurred is listed as "victim shot by police officer".

prior to and at the time of his death.

15. Gregory served as a medic in the United States Army. He volunteered with numerous community organizations following discharge from the Army, including working with special needs individuals and the Reserve Officer's Training Corps ("ROTC"). Gregory served his country with honor. He developed obvious signs of PTSD from decades of military service.

16. Prior to the July 15, 2023 fatal shooting, Walton and other officers within OPD knew Gregory had severe mental health issues and a documented history of suicidal threats. Virginia, Gregory's mother and personal representative of his estate, was present at Gregory's Odenville residence on at least two separate occasions, when OPD officers, including Chief Walton, responded to calls of Gregory threatening to shoot himself with a firearm. On those prior occasions, OPD officers and/or Chief Walton were able to persuade Gregory to disarm himself and seek help, and Gregory peacefully complied with their directives.

17. OPD officers and/or Chief Walton properly treated and classified these prior incidents as mental health calls. None of these prior incidents involved threats or perceived threats to any individual other than Gregory.

18. This incident occurred at 15705 U.S. Highway 411 in Odenville, Alabama. Gregory's parents owned the property and lived in a house located near U.S. 411. They have resided in that home for more than 50 years prior to Gregory's

death.

19. Gregory and Alma Darlene Bratcher ("Alma"), who were married approximately two years before his death, lived in an apartment in a detached building situated behind his parent's house.

20. Alma's daughter, Evangelia Bratcher ("Evangelia"), and Gregory's son, Nicholas Bratcher ("Nicholas"), lived in a mobile home situated beside the parent's house.

21. On July 15, 2023, at approximately 7:15 p.m., Gregory and Alma were inside of their apartment at his parent's property when they began arguing.

22. During the argument, Gregory walked out of the apartment and entered the mobile home occupied by Evangelia and Nicholas. Alma followed him into the mobile home, where their argument continued.

23. While inside of the mobile home, Gregory obtained a handgun and exited the home, walking toward an open field to the rear of the property and threatening to kill himself.

24. Alma and Nicholas followed Gregory into the field, pleading with him not to harm himself.

25. Evangelia called 911. She told a dispatcher Gregory walked toward the open field armed with a gun. Evangelia reported that Alma was with him at the rear of the property, and she was worried Gregory was going to shoot her mother.

26. Evangelia told the dispatcher that the family had notified the "VA Caregiver" Assistance Program about Gregory's mental health problems. She gave the dispatcher a description of Gregory and stated, "He's a veteran".

27. A dispatcher notified OPD that a caller had reported a male had her mother at gun point at the rear of the property.

28. OPD Officer Sarah Jaggard ("Jaggard") responded first to the scene.

29. As Officer Jaggard approached Gregory and Alma in the field, she informed dispatch: "I have eyes on them." Her body camera recorded the events that followed.

30. Within minutes of Officer Jaggard's arrival, Officer Linard arrived at the residence. Officer Linard's body camera footage also captured the unfolding events.

31. Officer Jaggard's body camera captured Alma standing directly in front of Gregory, who had a firearm in his right hand, held across his chest, pointed upward, over his left shoulder, toward the sky. Alma was pleading with Gregory not to harm himself.

32. By this time, Officer Linard had exited his patrol vehicle and had armed himself with a military-style assault rifle equipped with a scope and loaded .300 AAC Blackout, or 7.62×35 mm ammunition. After exiting his patrol car, Linard flipped his hat backwards to make it easier to peer down his scope and aim his rifle.

33. Officer Linard entered the field and assumed a sniper's position approximately 200 feet away from Gregory and Alma's location.

34. Officer Jaggard's loud verbal commands could be heard from the radio traffic and from Officer Linard's location. With her service weapon aimed at Gregory, Officer Jaggard shouted, "Drop the fucking weapon!" She immediately repeated, "Drop the fucking weapon!"

35. Within approximately two seconds of Officer Jaggard's second command to Gregory, Linard aimed his refile at Gregory, visualizing his body through the scope, and fired the fatal shot. Linard knew that one shot with this type of weapon and ammunition would kill Gregory immediately or soon thereafter by causing him to bleed out.

36. At all times relevant hereto, Gregory never aimed his weapon at any individual or himself.

37. Gregory never appeared to be holding Alma as a hostage. Rather, Alma followed Gregory into the field, begging him not to harm himself. She never presented herself as a hostage.

38. Prior to the shooting, Officer Linard made no effort to ask Gregory or Alma about the hostage report made by Evangelia in the initial 911 call. Linard made no effort to assess the situation prior to firing the fatal shot.

39. Furthermore, as Officer Linard was communicating with dispatchers

while responding to the scene, he confused Gregory with another Odenville resident whom OPD had previously arrested. Linard erred in confusing these two individuals. He made no effort to confirm Gregory's identity, and he failed to use any de-escalation techniques. Linard predetermined to resolve the situation immediately through deadly force.

40. Prior to the fatal shot, Gregory never moved the gun he was holding in his right hand, nor did he move the weapon in any way. At all times prior to the shooting, Gregory held the weapon in his right hand, across his chest, pointed upward over his left shoulder, and toward the sky.

41. At the time that Linard fired the fatal shot, Officer Jaggard still had her weapon drawn and aimed at Gregory, neutralizing any potential threat he could have caused. Despite being within feet of Gregory, Jaggard never fired her weapon. Jaggard did not believe Gregory to be an immediate threat to her, himself, Alma, or anyone else.

42. Prior to the shooting, Gregory was not an immediate threat to Alma, Officer Jaggard, Linard, or anyone else on the property or near the property. He was exhibiting signs of suicidal ideation.

43. Linard killed Gregory within minutes of arriving at the residence. He never attempted to properly assess the situation. He never spoke to Gregory or anyone else on the property, prior to firing the fatal shot.

44. Following the shooting, Odenville Police Chief Glenn Walton and his supervising officers supported and ratified Linard's use of unconstitutional, excessive, and/or unskillful force, erroneously finding that his use of force was proper.

45. Walton was responsible for the negligent hiring and supervision of Linard. Linard was not properly vetted for his position and certainly not properly trained on how to handle a mental health situation/suicide risk.

46. Alabama Code Section 1975 22-52-91 states that "when a law enforcement officer is confronted by circumstances and has reasonable cause for believing that a person within the county is mentally ill and also believes that person is likely to be of immediate danger to self or others, the law enforcement officer shall contact a community mental health officer".

47. Based on police audio/video recordings and witness reports, no community mental health officer made contact, or attempted to make contact, with Gregory prior to the shooting.

48. Previous encounters between Gregory and OPD officers, including Chief Walton, at Gregory's residence always resolved peacefully through verbal communication and de-escalation techniques. Despite Gregory showing obvious signs of suicidal ideation on the day of the shooting, OPD and its officers made no attempt to de-escalate the situation before Linard fired the fatal shot.

## CAUSES OF ACTION

### Count 1: Excessive Force Under 42 U.S.C. § 1983

49. This cause of action is brought against Linard, Walton, and the City pursuant to 42 U.S.C. § 1983, the Fourth Amendment, 42 U.S.C. § 1988, and the Alabama Wrongful Death Act, Ala. Code § 6-5-410. Plaintiff incorporates by reference all factual allegations in the preceding paragraphs.

50. Linard, while acting under color of law, deprived Gregory of his Fourth Amendment right to be free from excessive or unreasonable force during an arrest or seizure.

51. As described above, Linard subjected Gregory to excessive and unreasonable force when he fatally shot him. At all times when Linard was present at the scene, including the moment Gregory was shot, Gregory was standing with a firearm in his right hand, held across his chest, pointed over his left shoulder, and toward the sky. Gregory made no threatening statements or movements at any time, nor did he attempt to direct or move the weapon toward anyone, prior to the fatal shot. Gregory did not pose an immediate threat of harm to Linard, Jaggard, Alma, or anyone else located near or on the property. No reasonably prudent officer faced with similar circumstances would have acted in the same manner as Linard.

52. Linard's unconstitutional and excessive acts of force against Gregory were done with reckless indifference and a callous disregard of Gregory's Fourth

Amendment rights.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully requests this Honorable Court: (1) to enter judgment against Linard, Walton, and the City; (2) to award her, in an amount determined by the jury, either (a) punitive damages pursuant to Ala. Code § 6-5-410 for the death of Gregory Don Bratcher, Jr., or (b) compensatory damages arising out of his death according to federal common law remedy, including, but not limited to, lost wages and benefits, and future earning capacity; (3) to award him attorney's fees, expert witness fees, court costs, and interest as allowed by law; and (4) to award him all other relief as the Court deems proper.

## Count 2: Common Law Negligence and Wantonness

53. Each of the paragraphs of this Complaint is incorporated as if fully related herein.

54. This cause of action is brought against Linard and the City pursuant to the common law of the State of Alabama, Ala. Code § 11-47-190, and the Alabama Wrongful Death Act, Ala. Code § 6-5-410.

55. Linard negligently and/or wantonly shot Gregory in violation of (1) the standard of care applicable to police officers, (2) Alabama state law, (3) the specific, mandatory, and non-discretionary duties prescribed by OPD for performing his work; and (4) the Fourth Amendment to the U.S. Constitution.

56. In so doing, Linard acted with neglect, carelessness or unskillfulness and/or acted willfully, maliciously, in bad faith, recklessly, beyond his authority or under a mistaken interpretation of the law.

57. Linard was acting in the line and scope of his employment with the City, making the City vicariously liable under the doctrine of respondeat superior and Ala. Code § 11-47-190 for his neglectful, careless, and unskillful use of force.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully requests this Honorable Court: (1) to enter judgment against Linard, Walton, and the City; (2) to award her, in an amount determined by the jury, punitive damages pursuant to Ala. Code § 6-5-410 for the death of Gregory; (3) to award her court costs, and interest as allowed by law; and (4) to award her all other relief as the Court deems proper.

**Count 3: *Monell* Liability - Inadequate Mental Health Policies & Procedures - Against City of Odenville/Chief Walton Under §1983**

58. Each of the paragraphs of this Complaint is incorporated as if fully related herein.

59. At all times material herein, the City had a legal duty to adopt and implement rules and procedures to ensure that its police force appropriately restrained citizens in a manner which is safe to all parties and necessary under the circumstances, specifically as applied to mentally ill citizens.

60. This duty included, but was not limited to, the duty to create, adopt, and

implement rules, regulations, practices, and procedures, which clearly direct police officers as to the appropriate use of force under relevant circumstances, specifically as it applies to mentally ill citizens.

61. The City's treatment of mentally ill individuals involved in police encounters, including Gregory, amounts to an unconstitutional policy under §1983, as discussed in *Monell*.

62. In addition to the unconstitutional custom, policy, and practices alleged herein, OPD failed to comply with Ala. Code § 22-52-91, which required the inclusion, assistance, and cooperation of a community mental health officer in this incident. The Defendants clearly knew, or should have known, there was no hostage situation after arriving at the scene.

63. By its custom and practice, the City has adopted a use-of-force standard that differs from the reasonable national standard. The City's use-of-force custom and practice conflicts with criminal, civil, and constitutional law.

64. The officers in this incident disregarded any reasonable efforts to de-escalate the suicidal threats of a mentally ill individual.

65. The City knew, or should have known, that the failure to establish a custom, policy, or practice regarding proper use of force under relevant circumstances would result in repeated instances of excessive force by reason of carelessness, recklessness, deliberate indifference, or other culpable conduct.

66. As a proximate cause of the City's unconstitutional policy and deliberate indifference to the same, Gregory was killed.

67. The Plaintiff seeks costs, attorneys' fees, interest, and any other relief allowed under law.

**WHEREFORE PREMISES CONSIDERED**, the Plaintiff seeks the following relief (a) an award of compensatory and punitive damages in an amount to be determined by a jury; (b) an award of court costs, interest, and reasonable attorney's fees as provided under §1983; (c) specific injunctive relief mandating reform of the internal policies and procedures of the City, OPD, any Odenville Disciplinary or Review board, or similar body, the makeup of that board and oversight of that board, and changing OPD policies to comport with constitutional requirements regarding use of force; and (d) any other relief which is found to be proper under the circumstances.

## JURY DEMAND

Plaintiff requests a trial by jury on all factual issues, including damages.

Respectfully submitted,

*/s/ James Michael Perry*
**JAMES MICHAEL PERRY (9843P34C)**
PERRY INJURY LAW
204 Main St., Suite 203
Trussville, AL 35173
P: (205) 386-1111
E: mike@perryinjurylaw.com
*Attorney for Plaintiff*

*/s Martin Weinberg*
**MARTIN WEINBERG (0817A61W)**
P.O. Box 154
Shannon, AL 35142
P; 205-785-5575
E: Attorneyweinberg@bellsouth.net
*Additional counsel for the Plaintiff*

### Request for Service by Certified Mail

Plaintiff Virginia Bratcher requests the Clerk to immediately issue a summons for each of the following defendants so they can be served by certified U.S. Mail pursuant to F.R.C.P. 4(e)(1), (j)(2) and A.R.C.P. 4(c)(1), (8).

**JEFFERY E. LINARD II**
150 Hickory Lane
Odenville, AL 35120

**CITY OF ODENVILLE**
c/o
Katie Roberson
City Clerk
183 Alabama Street
Odenville, AL 35120

**CHIEF GLENN WALTON**
c/o
Odenville Police Department
2600 US Hwy 411
Odenville, AL 35120

*/s/ James Michael Perry*
**OF COUNSEL**
