FILED
2026 Sep-08 AM 09:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

**VIRGINIA BRATCHER,**
Plaintiff,

**v.**

**JEFFREY EUGENE LINARD, II, et al.,**
Defendants.

**Case No. 4:25-cv-1139-CLM**

**MEMORANDUM OPINION**

Gregory Don Bratcher, Jr., a veteran suffering from post-traumatic stress disorder, was shot and killed during an encounter with Odenville Police Officer Jeffrey Eugene Linard, II. Virginia Bratcher, who is Gregory's mother and the personal representative of his estate, sues Linard for excessive deadly force under 42 U.S.C. § 1983 (Count 1) and sues both Linard and the City of Odenville for wrongful death under Alabama's Wrongful Death Act (Count 2). (Doc. 31).

Linard has answered Bratcher's claim for excessive force under § 1983. (Doc. 36). But both Linard and Odenville move to dismiss Bratcher's claims under Alabama's Wrongful Death Act. (Docs. 34 & 35). For the reasons stated within, the court **GRANTS** the motions to dismiss (docs. 34 & 35) and **DISMISSES WITH PREJUDICE** Count 2 of Bratcher's second amended complaint. This case will proceed on Bratcher's Count 1 claim for excessive force against Linard only.

**BACKGROUND**

Because Bratcher is defending against Rule 12 motions to dismiss, the court recites the complaint's alleged facts and this case's procedural history in a light most favorable to her.

## A. Statement of the Alleged Facts

Gregory was a 45-year-old decorated soldier who had served multiple tours in overseas missions with the United States Army. (Doc. 31, ¶¶ 1, 9). As a result of his military service, Gregory suffered from PTSD and had begun to exhibit suicidal ideation. (*Id.*, ¶ 9). So Gregory was under the care and treatment of providers at the U.S. Department of Veteran's Affairs at the time of his death. (*Id.*).

Gregory and his wife, Alma, lived in an apartment in a detached building behind his parents' house in Odenville, Alabama. (*Id.*, ¶¶ 11–12). Alma's daughter, Evangelia, and Gregory's son, Nicholas, lived in a mobile home beside Gregory's parents' house. (*Id.*, ¶ 13). On July 15, 2023, at around 7:15 p.m., Gregory and Alma began arguing inside their apartment. (*Id.*, ¶ 14). During the argument, Gregory walked out of the apartment and entered Evangelia and Nicholas's mobile home. (*Id.*, ¶ 15). Alma followed Gregory into the mobile home, and their argument continued. (*Id.*).

Inside the mobile home, Gregory grabbed a handgun then left, walking toward an open field to the rear of the property and threatening to kill himself. (*Id.*, ¶ 16). Alma and Nicholas followed Gregory into the field, pleading with him not to harm himself. (*Id.*, ¶ 17). Evangelia called 911. (*Id.*, ¶ 18).

Dispatch notified the Odenville Police Department that a caller had reported a male had her mother at gun point at the rear of their property. (*Id.*, ¶ 20). Officer Sarah Jaggard responded first to the scene and informed dispatch that she had "eyes on them." (*Id.*, ¶¶ 21–22). Within minutes, Officer Linard arrived at the residence. (*Id.*, ¶ 23). As shown in video from Jaggard's body camera, Alma was standing directly in front of Gregory, who had a firearm in his right hand, held across his chest, pointed upward, over his left, shoulder, and toward the sky. (*Id.*, ¶ 24). Alma was pleading with Gregory not to harm himself. (*Id.*).

By this time, Linard had exited his patrol vehicle and armed himself with a military-style assault rifle equipped with a scope and loaded .300 AAC Blackout, or 7.62 x 35 mm ammunition. (*Id.*, ¶ 25). Linard entered the field and assumed a sniper's position about 200 feet away from Gregory and Alma's location. (*Id.*, ¶ 26). With her service weapon aimed at Gregory, Officer Jaggard

twice shouted in rapid succession, "Drop the fucking weapon!" (*Id.*, ¶ 27). Within around two seconds of Jaggard's second command, Linard aimed his rifle at Gregory and fired a fatal shot. (*Id.*, ¶ 28).

Before Linard shot, Gregory never aimed his weapon at anyone, including himself. (*Id.*, ¶ 29). Instead, Gregory held the weapon in his right hand, across his chest, pointed upward over his left shoulder, and toward the sky. (*Id.*, ¶ 34).

### B. Procedural History

1. *Filing fee*: On July 14, 2025, Bratcher filed her original complaint, asserting three claims against Linard, Odenville, and Odenville Police Chief Glenn Walton: (a) excessive force under 42 U.S.C. § 1983, (b) negligence and wantonness under Alabama's Wrongful Death Act, and (c) *Monell* liability under § 1983. (Doc. 1). Under 28 U.S.C. § 1914, the party "instituting any civil action" must pay a $350 filing fee and $55 administrative fee. *See* 28 U.S.C. § 1914(a) and (b). But Bratcher did not pay the filing fee when she filed her original complaint. So on July 21, 2025, the Clerk's Office contacted Bratcher's counsel about the need to pay the filing fee and provided instructions on how the filing fee could be paid. (Doc. 42-1, p. 4).

Counsel did not respond to the Clerk's email. So on July 25, 2025, the Clerk's Office again reached out to counsel "regarding non-payment [of the] filing fee in the above referenced case." (*See id.*). Counsel then responded that he "tried paying [the fee] online through Pacer and CM/ECF earlier this week, but . . . did not see an option anywhere on those sites for making payment." (*Id.*, p. 3). The Clerk's Office then provided more detailed instructions on how to pay the filing fee online, and counsel paid the filing fee around 12:04 p.m. on July 25. (*Id.*, pp. 1–2).

2. *Summons*: At the bottom of the original complaint, Bratcher requested that the Clerk's Office "immediately issue a summons" to Linard, Odenville, and Walton:

**Request for Service by Certified Mail**

Plaintiff Virginia Bratcher requests the Clerk to immediately issue a summons for each of the following defendants so they can be served by certified U.S. Mail pursuant to F.R.C.P. 4(e)(1), (j)(2) and A.R.C.P. 4(c)(1), (8).

**JEFFERY E. LINARD II**
150 Hickory Lane
Odenville, AL 35120

**CITY OF ODENVILLE**
c/o
Katie Roberson
City Clerk
183 Alabama Street
Odenville, AL 35120

**CHIEF GLENN WALTON**
c/o
Odenville Police Department
2600 US Hwy 411
Odenville, AL 35120

(Doc. 1, p. 17). But no summons was issued until September 4, 2025. (Doc. 3). That's because only after the plaintiff presents a "properly completed" summons does the Clerk of Court "sign, seal, and issue" the summons "to the plaintiff for service." *See* Fed. R. Civ. P. 4(b). And Bratcher's counsel was unaware that he needed to present a copy of the completed summons to the Clerk before summons would be issued. When counsel learned that it was his responsibility to fill out the summons, he immediately presented the summons to the Clerk and promptly served Defendants with the summons and complaint by process server.

Linard and Walton were served on September 5, 2025, and Odenville was served on September 8, 2025. After Defendants moved to dismiss Bratcher's complaint, she voluntarily dismissed Walton as a defendant and filed an amended complaint. (Docs. 19 & 20). Linard and Odenville again moved to dismiss Bratcher's claim under Alabama's Wrongful Death Act. (Docs. 25 & 26). Bratcher responded by filing a second amended complaint. (Doc. 31). And Linard and Odenville have again moved to dismiss Bratcher's state-law claims for wrongful death. (Docs. 34 & 35).

## STANDARD OF REVIEW

1. *Rule 12(b)(6)*: In reviewing Defendants' Rule 12 motion, the ultimate question is whether Bratcher's allegations, when accepted as true, "plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). If the facts as pleaded could entitle Bratcher to relief, then the court must deny Defendants' motions to dismiss. If, however, the court accepts all of Bratcher's pleaded facts as true, and Bratcher still would not be entitled to relief, then the court must grant the motions to dismiss.

2. *Judicial notice*: Under *Federal Rule of Evidence* 201, this court may "take judicial notice of its own records . . . . " *See United States v. Rey*, 811 F.2d 1453, 1457 n. 5 (11th Cir. 1987). And consideration of this court's own documents does not require the court to convert Defendants' motions to dismiss into motions for summary judgment. *See Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013).

## DISCUSSION

Both Linard and Odenville move to dismiss Bratcher's Wrongful Death Act claims as time-barred. Odenville also argues that the wrongful death claims brought against it should be dismissed because: (a) Bratcher failed to comply with Alabama's *ante litem* notice of claim statute, and (b) Odenville is entitled to immunity under Ala. Code § 11-47-192. The court agrees with Linard and Odenville's timeliness argument, so the court needn't address Odenville's other two arguments for dismissal.

### A. Legal Standard

When federal courts exercise supplemental jurisdiction over a state-law claim, the state's statute of limitations, including its tolling rules, applies. *See Cambridge Mut. Fire Ins. Co. v. City of Claxton*, 720 F.2d 1230, 1232 (11th Cir. 1983). In Alabama, a personal representative has two years from the death of the decedent to bring a wrongful death action. *See* Ala. Code § 6-5-410(d). This two-year period "is not a statute of limitations," but is a "statute of creation" that is essential to the wrongful death cause of action. *See Pollard v. H.C. P'ship*, 309 So. 3d 1189, 1194 (Ala. 2020). So this two-year period is not subject to tolling. *See id.*

The filing of a complaint, by itself, does not start an action for purposes of satisfying § 6-5-410(d)'s two-year requirement. *See Precise v. Edwards*, 60 So. 3d 228, 230–31 (Ala. 2010). Instead, the plaintiff must also show "a bona fide intent to have [the complaint] immediately served." *Id.* at 231. "[A] bona fide intent to have an action immediately served can be found when the plaintiff, at the time of filing, performs all the tasks required to serve process." *Id.* at 233 (cleaned up). "On the other hand, when the plaintiff, at the time of filing, does not perform all the tasks required to effectuate service and delays a part of the process, a lack of the required bona fide intent to serve the defendant is evidenced." *Id.* Failing to pay the filing fee also shows that a plaintiff does "not have a *bona fide* intent, at the time of filing, to proceed with [an] action." *See De-Gas v. Midland Res.*, 470 So. 2d 1218, 1221–22 (Ala. 1985). "The question whether a bona fide intent existed at the time the complaint was filed must be determined by an objective standard." *Ex parte Holland*, 415 So. 3d 3, 5 (Ala. 2024).

Two recent decisions from the Alabama Supreme Court explain how this analysis works.

1. *Ex parte Holland*: In *Ex parte Holland*, Ashley Moore sued two Pleasant Grove police officers for injuries she allegedly suffered when the officers returned fire from a fleeing criminal suspect in Moore's neighborhood. *See id.* at 4. Moore added the officers as defendants on "the final day of the applicable two-year statute-of-limitations period." *Id.*

Moore's amended complaint "included instructions for the circuit clerk to serve the summonses and the amended complaint on both officers by certified mail at the addresses listed in the amended complaint." *Id.* But while the clerk sent a summons and complaint to Officer Gresham by certified mail, the clerk did not send a summons or complaint to Officer Holland. *See id.* So Holland wasn't served until 116 days later when a process server personally served him with an alias summons. *See id.*

The Alabama Supreme Court determined that the circuit clerk did not serve Holland by certified mail because the fee required to serve Holland was not paid, which was likely the result of user error on the part of Moore's counsel during the e-filing process. *See id.* at 5–6. Thus, although the record confirmed

that Moore subjectively intended to serve Holland via certified mail, "viewed objectively, Moore's unexplained failure to perform the necessary tasks required to effectuate service at the time of filing show[ed] a lack of the required bona fide intent to have Holland immediately served." *Id.* at 6. As a result, the Alabama Supreme Court determined that Holland was entitled to Rule 12(b)(6) dismissal of the claims against him on statute of limitations grounds. *Id.* at 7.

2. *Ex parte Stonebridge*: More recently in *Ex parte Stonebridge*, *LLC*, 2026 WL 251673 (Ala. Jan. 30, 2026), the Alabama Supreme Court considered whether a pro se plaintiff evidenced a bona fide intent to effect service of process before the statute of limitations expired. There, the pro se plaintiff identified Hubbard Properties as the defendant and provided the clerk with Hubbard's address. *See id.* at *1. But the plaintiff "did not include any summonses with her complaint, and she did not provide the circuit clerk with any instructions regarding service of process or indicate that she planned to hire a process server." *Id.* It wasn't until two years later, well after the statute of limitations had expired, that the plaintiff hired counsel and served Defendants. *See id.* In response to Defendants' Rule 12(b)(6) motions to dismiss, the plaintiff said that she was "under the impression that the clerk's office would complete service." *Id.* at *2.

The Alabama Supreme Court held that the plaintiff "failed to timely commence her action for statute-of-limitations purposes and, as a result, her complaint must be dismissed." *Id.* In making this determination, the court found that "the mere fact that [the] original complaint included an address at which service of process could have been perfected does not establish that [the plaintiff] had the bona fide intent for immediate service of process at that time." *Id.* at *3. The court also reasoned that the plaintiff's "contention that she was unaware of the service requirements does not excuse her failure to take steps to ensure service of process at the time she filed her original complaint." *Id.* at *5.

### B. Application

Applying this precedent, the court finds that Bratcher's wrongful death claims were untimely. Gregory died on July 15, 2023, so everyone agrees that

Bratcher filed her original July 14, 2025, complaint within the two-year period required by Ala. Code § 6-5-410(d). But Bratcher did not pay the filing fee at the time she filed her complaint. Instead, the Clerk's Office had to twice reach out to Bratcher's counsel before the filing fee was paid. And when the filing fee was paid on July 25, 2025, the two-year filing period had lapsed.

Nor did Bratcher take all steps necessary to ensure service of process at the time she filed her original complaint. To be sure, Bratcher included the addresses for Linard and Odenville at the bottom of her complaint and asked the Clerk "to immediately issue a summons for each of the following Defendants, so they can be served by certified U.S. Mail." (Doc. 1, p. 17). But Bratcher did not provide the Clerk with a completed summons, which is required before the Clerk will issue the summons for service. *See* Fed. R. Civ. P. 4(b); *see also* Fed. R. Civ. P. 4 advisory committee's note to 1993 amendments ("The revised text makes clear that the responsibility for filling in the summons falls on the plaintiff, not the clerk of court."). So summons wasn't issued until September 4, 2025, which was around 50 days after the two-year filing window had passed.

Viewed objectively, Bratcher's failure to pay the filing fee and take the steps necessary to effectuate service "shows the lack of the required bona fide intent" to commence this action within the required two-year period. *See Ex parte Holland*, 415 So. 3d at 6. So the court agrees with Linard and Odenville that Bratcher's wrongful death claims should be dismissed as untimely.

—

Bratcher's arguments against dismissal are unconvincing.

1. *Subjective intent*: Bratcher first asserts that the court should not dismiss her wrongful death claims on timeliness grounds because her counsel intended to pay the filing fee and have summons issued within the required two-year period. In support of this argument, Bratcher points to (a) "technical issues" that counsel says prevented him from paying the filing fee, and (b) that Bratcher's complaint included a written request for service via certified mail that included the mailing address for both Linard and Odenville.

But Bratcher and her counsel's subjective intent is irrelevant to the bona fide intent inquiry, and the Alabama Supreme Court has rejected the same arguments that Bratcher makes here. For example, in *Ex parte Holland*, the court found that the record confirmed that Moore intended to serve both Holland and Gresham by certified mail but held that "user error during the electronic-filing process" resulted in the objective evidence showing "a lack of the required bona fide intent." *Id.* at 6. Thus, despite technical issues causing the delayed service, the court dismissed Moore's claims against Holland on statute of limitations grounds. *Id.* at 7. And in both *Ex parte Holland* and *Ex parte Stonebridge*, *LLC*, the plaintiff included the defendant's address in her complaint. *See id.* at 4 ("[T]he complaint included instructions for the circuit clerk to serve the summonses and the amended complaint on both officers by certified mail on the addresses listed in the amended complaint."); *Ex parte Stonebridge*, *LLC*, 2026 WL 251673, at *1 (Plaintiff identified Hubbard Properties as a defendant and filled in the blanks designated for the parties' addresses). Yet both plaintiffs' complaints were dismissed on timeliness grounds because including the defendant's address and a request for service by certified mail in the complaint is not the only step required for the clerk to issue a summons.

Nor is this case like *Brooks v. Austal USA, LLC*, 297 So. 3d 434, 439 (Ala. Civ. App. 2019), or *Thompson v. E.A. Industries, Inc.*, 540 So. 2d 1362, 1363 (Ala. 1989), which Bratcher cites to assert that the face of her complaint establishes a bona fide intent to serve the complaint at the time of filing. In *Thompson*, "service of process was attempted, but was unsuccessful." 540 So. 2d at 1363. And in *Brooks*, the plaintiff provided the clerk with everything the clerk needed to issue a summons, but the summons was returned unexecuted because the entity served was the defendant's former registered agent. 297 So. 3d at 435, 439. Thus, the rule from those cases is "a plaintiff who files a complaint with the bona fide intent that it be immediately served on the defendant has 'commenced' an action for statute-of-limitations purposes, even if the initial attempt at service fails for want of the defendant's correct address." *Id.* at 439.

Here, in contrast, the Clerk did not attempt service until over 50 days after the time for filing Bratcher's wrongful death claims had expired because Bratcher had not provided the Clerk with a "filled in" summons, which is required before the Clerk can effectuate service. Because Bratcher did not "perform all the tasks required to effectuate service" and thus "delay[ed] part of the process, a lack of the required bona fide intent to serve [Linard and Odenville was] evidenced." *See Precise*, 60 So. 3d at 233.

2. *Delay ruling until summary judgment*: Bratcher also asks the court to deny Linard and Odenville's motions to dismiss as premature and find that the timeliness issue is better decided at the summary judgment stage. As Bratcher notes, typically, "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate" only "if it is apparent from the face of the complaint that the claim is time-barred." *Gonsalvez v. Celebrity Cruises, Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013). So in ruling on the same bona fide intent argument that Linard and Odenville raise here, two of my former colleagues determined that this issue was best left for the summary judgment stage. *See Carter v. Walgreens Specialty Pharmacy*, LLC, 2017 WL 2001706, at *2 (N.D. Ala. May 12, 2017); *Flood v. City of Jacksonville*, 263 F. Supp. 3d 1213, 1230 (N.D. Ala. 2017).

But this court may take judicial notice of its own records even at the motion to dismiss stage. *Rey*, 811 F.2d at 1457 n. 5; Fed. R. Evid. 201(d). And the court's records, including the docket sheet, correspondence with counsel, and lack of receipt of a timely paid filing fee or completed summons, is what establishes that Bratcher did not show an objective bona fide intent to commence this action within the required two-year period. That counsel struggled to figure out how to pay the filing fee, was delayed in making the filing fee payment because of mediation and trial preparation, and mistakenly believed that he had done everything he needed to do for the Clerk to serve Linard and Odenville by certified mail cannot alter the fact that no objective evidence suggests a bona fide intent to proceed with this action during the relevant two-year window. Thus, the court will follow the example of Judge Coogler and the Alabama Supreme Court and dismiss Bratcher's wrongful death claims at the Rule 12 stage. *See Broady v. Herd*, 2024 WL 946116, at *2–3 (N.D. Ala. Mar. 5, 2024) (dismissing wrongful death claims at motion to dismiss stage because the court's docket entries made it "evident" that the plaintiff didn't satisfy the two-year requirement); *Ex parte Holland*, 415 So. 3d

at 7 (granting writ of mandamus and directing trial court to dismiss claims against Holland under Rule 12(b)(6)); *Ex parte Stonebridge, LLC*, 2026 WL 251673, at *5 (granting writ of mandamus and directing trial court to dismiss claims under Rule 12(b)(6)).

—

In sum, Bratcher failed to timely commence her wrongful death claims because the record includes no objective indication that Bratcher intended to either pay the filing fee or serve Defendants within the two-year filing period. The court will thus dismiss Bratcher's wrongful death claims as time-barred. The court also reminds all attorneys that they needn't wait until near the last day of a years-long statute of limitations before filing their complaint. Earlier filing cures many avoidable ails.

## CONCLUSION

For these reasons, the court **GRANTS** Linard and Odenville's motions to dismiss (docs. 34 & 35). The court will enter a separate order that carries out this ruling and **DISMISSES WITH PREJUDICE** Count 2 of Bratcher's second amended complaint. This case will proceed on Count 1 only.

**DONE** and **ORDERED** on September 8, 2026.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE